The judgment of the Appellate Division should be reversed, and that of the Court of Sessions affirmed.

All concur, except BARTLETT, J., who dissents on the ground that the affidavit on appeal was sufficient for reasons stated by the Appellate Division. Judge BARTLETT agrees with the opinion as to the obligation resting upon the magistrate to preserve and return the evidence taken before him.

Judgment accordingly.

---

LIZZIE BUTCHER, Respondent, *v.* RICHARD HYDE et al.,
Appellants.

NEGLIGENCE — ERROR IN REFUSAL TO CHARGE. The refusal of a request to charge that if the plaintiff fell from the fourth or fifth step the verdict must be for the defendants, is error, in an action to recover damages for negligence in respect to the condition of a stairway, where there is no proof of any defect except in the condition of a strip of rubber on the sixth step; and the error is not rendered harmless by a charge that plaintiff could not recover unless the rubber covering one of the steps was loose and projected above the surface.

*Butcher* v. *Hyde*, 10 Misc. Rep. 275, reversed.

(Argued February 10, 1897 ; decided March 2, 1897.)

APPEAL from a judgment of the General Term of the City Court of Brooklyn, entered November 28, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial made upon the minutes of the trial court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*B. F. Tracy* for appellants. The refusal of the court to charge, as requested by defendants, that, if plaintiff fell from

the fourth or fifth step, the verdict must be for the defendants, was error. (*Doughty* v. *Hope*, 3 Den. 594; *Clark* v. *Vorce*, 19 Wend. 232; *Le Roy* v. *P. F. Ins. Co.*, 39 N. Y. 56; *Hope* v. *Lawrence*, 50 Barb. 258.)

*James D. Bell* and *Frederick E. Crane* for respondent. The court below properly refused to charge that, if plaintiff fell from the fourth or fifth step, the verdict must be for the defendants. (*Wynn* v. *C. P., N. & E. R. R. R. Co.*, 133 N. Y. 575; *Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302; *Hoes* v. *T. A. R. R. Co.*, 5 App. Div. 151.)

Martin, J. This action was for personal injuries sustained by the plaintiff alleged to have been caused by the defendants' negligence. The defendants were the proprietors of a theatre in the city of New York.

On the afternoon of March 8th, 1893, the plaintiff attended a matinee at their theatre, and occupied a seat in the balcony. At the conclusion of the entertainment, while descending to the floor below, she received the injuries for which she seeks to recover in this action. The stairs by which she descended led to a landing, and from the landing to the lower floor. The plaintiff while descending tripped, or her foot was caught, she fell and was seriously injured.

On the trial, in describing how the accident occurred, she testified: "We got to the stairs, and I started down; I put my — I don't know whether it was four or five steps down — I put my right foot down, and when I went to put the left I found my heel was caught — my heel was caught, and that pitched me head first; I fell on the platform; on the landing; the step from the landing on which I caught my foot was five or six; I think it was four or five steps I fell; I can't say if it was as much as that; I don't know on which step it was that I caught my foot; four or five steps I tell you; I know that my heel was fast because I know I couldn't move it; I could feel it; my foot was caught, so that pitched me; the front part of my heel must have been caught; it was my whole

heel was held; I say I fell onto the landing; I struck my head there; there is the marks."

She also called as a witness Mrs. Wooster, who testified that she was with the plaintiff when the accident occurred, and "I see the rubber loose on the sixth step; loose I should judge about six or seven inches lengthways; I could see the rubber was loose; it stood up; I should judge it stood up an inch and a half; it was loose along the step six or seven inches; I noticed something else about the rubber; the nails were out, two nails; the nail holes were closed up with dust; I noticed the nail heads were bright each side, each side of the rubber. that was up; from the nail holes that were closed up; these nail heads that I saw that were bright were an inch and a half or two inches apart; there were two holes closed up with dust that I saw; those were an inch and a half or two inches apart; on the sixth step from the landing; those two nail holes that I say I saw closed up were in the center of the stairs; this rubber does not cover the entire portion of the step; it extends back from the edge of the step four inches; about four or five inches of the step is not covered by the rubber; this rubber runs along the entire length of the step."

The plaintiff also called her grandson as a witness, who testified that he visited the theatre on the night following the accident; that he reached there about half-past eight in the evening, and "I examined the rubber on the sixth step from the landing on the right-hand flight of stairs; that rubber that lies on the step was about a quarter of an inch; it might be a little more, or it might be a little less, but I think about a quarter of an inch; the rubber when I saw it was loose; it projected up.  *   *   *   I seen that there were two places there in the shape of a nail hole, or tack holes, where holes were once, but they were filled up with dust or dirt; I placed my fingers, in this manner, underneath the rubber; there were no nails underneath; that rubber projected up about an inch to an inch and a half and for a distance along the edge of the step — along the flat portion of the step — about six inches; I could not see through those holes; about five inches, five or

six inches, of the flat portion of the step was not covered with the rubber; that is, the distance from the back edge of the rubber to the riser of the step."

This was practically the only evidence offered by the plaintiff as to the manner in which the accident occurred, or which related to the defendants' negligence.

When the plaintiff rested, the defendants moved to dismiss the complaint upon the grounds: 1. That it appeared that the plaintiff, according to her own statement, had her foot on either the fourth or fifth step from the landing when she fell, and if she fell from either of those steps the situation of the sixth was immaterial; 2. That if the sixth step was out of order it did not appear that it had been in that condition a sufficient length of time previous to the accident to give the defendants an opportunity to repair it; that the plaintiff could not recover unless it had been out of order a sufficient length of time to justify the jury in finding that the defendants ought to have observed and remedied the defect before the accident, or there must be proof of express notice; and, 3. That the plaintiff was guilty of contributory negligence. This motion was denied.

Two witnesses called by the defendants corroborated that portion of the evidence of the plaintiff which was to the effect that she fell from the fourth or fifth step. Four witnesses were called by them, some of whom testified that the plaintiff stated that she did not know how she fell, and others that she stated she must have tripped on her dress. The defendants also produced nine witnesses, three of whom were of the audience, who testified that there was no disarrangement of the rubber on the sixth step, or on any of the steps of the staircase upon which the plaintiff fell, and that the rubber was not loose, wrinkled or projecting, and some of them testified that there were no tack holes in it.

This review of the evidence discloses that the plaintiff's proof of negligence on the part of the defendants was at most slight, and seems to indicate that the preponderance of evidence was to the effect that the claimed defect in the stairs

did not exist.   The burden of establishing it rested upon the plaintiff, and to entitle her to recover she was required to do so by a fair preponderance of evidence.   It is at least doubtful if she sufficiently proved the defendants' negligence.   If, however, it is assumed that there was sufficient evidence to present a question of fact as to whether the nails were removed and the rubber displaced in the manner claimed, still, the evidence of the plaintiff was so thoroughly contradicted and the question was so close that the defendants were entitled to have the case presented to the jury in precise accordance with the proof.

At the close of the evidence, and after the court had made its principal charge, the defendants requested it to instruct the jury that, if the plaintiff fell from the fourth or fifth step, the verdict must be for the defendants.   The court declined, and the defendants duly excepted.   We think this was error.

An examination of the record shows that there was no proof of any defect whatever in the stairway upon which the plaintiff was injured, except that two nails which formerly fastened the rubber to the sixth step were missing.   Consequently, the only important question for the jury related to the condition of the rubber upon that step.   If the plaintiff fell from the fourth or fifth step, then obviously the condition of the rubber on the sixth in no way occasioned or contributed to her injury, and she could not recover.   But it is said that, inasmuch as the court charged the jury that the plaintiff could not recover unless the rubber covering one of the steps was loose and projected above the surface, the refusal to charge the defendants' request was harmless and would not justify a reversal.   We do not think that claim can be sustained.   The refusal to charge that request amounted to a tacit instruction by the court to the effect that, if there was a rubber covering any one of the steps that was loose and projected above the surface, the plaintiff might recover, although there was no evidence that there was any defect except to the sixth.   By this instruction, the jury was permitted to find a fact with no proof whatever to sustain it, or, in other words, to speculate as to the

possibility of there having been a loose rubber upon one of the steps, as to which no proof had been given. Manifestly, this was error and requires a reversal of the judgment.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed. _____