Chattanooga Light & Power Co. v. Hodges.

CHATTANOOGA LIGHT & POWER CO. *v.* HODGES.

(*Knoxville.*   September Term, 1902.)

1. **NEGLIGENCE. Proximate cause—"Concurrence of these essentials."**

   To warrant a recovery in an action for personal injuries sustained through the alleged negligence of defendant, the plaintiff must show not only that the defendant was guilty of negligence, but that such negligence was the proximate cause of the injuries complained of.   (*Post, p.* 335.)

2. **PROXIMATE CAUSE. What is—Determined by the special facts of each case.**

   The determination of the proximate cause of a specific injury, and whether such injury is the natural consequences of the wrongful act complained of, must at last be left to a sound judgment upon the special facts of each case and often upon the nicest discrimination.   (*Post, pp.* 337-338.)

   Cases cited and approved:   Harrison *v.* Berkley, 1 Strob., 547 (47 Am. Dec., 578); Insurance Co. *v.* Tweed, 7 Wall, 49.

3. **SAME. Same. General definition approved.**

   The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent an injury; an act or omission occurring, or concurring with another, which had it not happened, the injury would not have been inflicted.   (*Post, p.* 338.)

   Cases cited:   Deming *v.* Cotton Press Co., 90 Tenn., 353; Telegraph Co. *v.* Zopfi, 93 Tenn., 369; Railroad *v.* Kelly, 91 Tenn., 699; Anderson *v.* Miller, 96 Tenn., 35.

4. **SAME. Wrongdoer liable for consequential injuries, when.**

   It is well settled that a wrongdoer is liable not only for the proximate results of his acts, but for such consequential in-

Chattanooga Light & Power Co. v. Hodges.

juries as, according to the common experience, naturally re-
sult from the wrongful act in the usual and ordinary course
of events.  (*Post, pp.* 338-339.)

Cases cited: Wiley *v.* Railroad Co., 44 N. J., 248; Railroad *v.*
Kellogg, 94 U. S., 469.

5. **SAME. Intervening act of party injured—Proximate
cause, when.**

Although the doer of the act complained of has been guilty of
negligence, yet he will not be held liable if the injury re-
sults, not as the natural consequence of the original negli-
gent act, but from an intervening act of the party injured,
such as no reasonable man would expect to occur, and so ob-
viously fraught with peril as to deter a man of reasonable
intelligence; in such case the intervening act will be treated
as the proximate cause.  (*Post, pp.* 339-341.)

Cases cited: Sharp *v.* Powell, L. R., 7 C. P., 253; State *v.*
Railway Co., 65 Tex., 274; Pike *v.* Railway Co. (C. C.), 39
Fed. Rep., 255.

6. **SAME. Proximate or intervening cause—Question for
court when facts undisputed.**

While ordinarily it is for the jury to determine the proximate
cause of an injury, yet where the facts are incontrovertible,
the question of proximate or intervening cause is for the
court.  (*Post, p.* 341.)

Cases cited: Holman *v.* Security Co. (Colo. App.), 45 Pac.
Rep., 519; Stone *v.* Railroad Co. (Mass.), 51 N. E., 1 (41 L.
R. A., 794); Bradley *v.* Railway Co., 94 Mich., 35; Butcher
*v.* Hyde, 152 N. Y., 142.

7. **SAME. Injury to employee running into burning build-
ing. Case in judgment.**

Plaintiff's intestate was employed by defendant as an engineer
in its power house which, through the negligent condition and
arrangement of its electric wires in connection with highly
combustible lumber, was caused or allowed to take fire.  Al-
though there was a telephone in the building, intestate, in-
stead of sending in an alarm over it, ran to a house across
the street and sought to use a telephone located therein; fail-
ing in this, he returned, ran into the main entrance of the

Chattanooga Light & Power Co. v. Hodges.

building from which flames and smoke were then issuing and went down the burning hallway into the telephone booth, or box, when it was on fire; remaining there but a short time, he came out with his clothing aflame and so horribly burned that from the injuries thus received he died.

HELD: That, although there may have been such negligence on the part of defendant in the construction of the building as to cause it to take fire, yet the intervening act of plaintiff's intestate in returning into the building was the proximate cause of his injury and barred a recovery for his death.

FROM HAMILTON.

Appeal in error from the Circuit Court of Hamilton County. FLOYD ESTILL, Judge.

BROWN & SPURLOCK, for Chattanooga Light & Power Co.

RICHMOND, CHAMBERS & HEAD, for Hodges, administrator.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This suit was brought by the defendant in error to recover damages for the death of his intestate, Milton Palmer, resulting, as is alleged, from the negligence of the plaintiff in error. There was a verdict and judgment in favor of the administrator for $10,000, and the case has been brought to this court by the Light and Power Company.

The deceased was one of the engineers of the company, and at night had charge of its power house engines and other machinery. While he was on duty, and about 9:30 p. m., fire was discovered in a framework cover of the electric wires which led up through the hallway to the room above, where they made their exit from the building. The fire rapidly spread, and occasioned the terrible injuries from which Palmer died. The theory of the plaintiff below was that negligence on the part of the defendant company in the use of combustible lumber in making this framework, and also in the location and condition of these wires, occasioned the fire which fatally burned the deceased while he was discharging his duty in seeking to save the property of his employer.

The record shows that on discovering the fire, young Palmer, instead of sounding the alarm through a telephone in the building, ran to a house across the street, and sought to do so with a telephone located there. After an ineffectual effort to make connection, he abandoned it, and returned to the power house. By that time the fire had spread until it was a serious conflagration. The flames and smoke were pouring out of the main entrance and the windows in that part of the building. There were other openings or doors into the power house, but, seeing Palmer in the act of passing in through this main entrance, a policeman on the ground expostulated with him on what he characterized as "foolhardiness." Disregarding the

Chattanooga Light & Power Co. v. Hodges.

expostulation, however, Palmer entered there, and went down the burning hallway into the telephone booth or box when it was on fire. Remaining there but a short time, he came out with his clothing aflame, and so horribly burned that in catching at himself the flesh parted or slipped from his hands. From these injuries he died.

This is a meager outline of the fire and its results, so far as they affect the present case. While the evidence attributing the origin of the fire to negligence of the company was attenuated, it may be assumed that, with its inferences, it was sufficient to preclude us, under the rule, from saying that there was not material evidence to support the verdict on this point. Assuming, therefore, that the jury were warranted in finding that the defendant company was guilty of such negligence, were they also warranted in finding that this negligence was the proximate cause of Palmer's fatal injuries? For there must be a concurrence of these essentials in order to maintain the present action.

It seems to be well settled that, where one person is exposed to peril of life or limb by the negligence of another, the latter will be liable in damages for injuries received by a third party in a reasonable effort to rescue the one so imperiled. *Pennsylvania Co.* v. *Roney,* 89 Ind., 453 (46 Am. Rep., 173) ; *Linnehan* v. *Sampson,* 126 Mass., 506 (30 Am. Rep., 692) ; *Eckert* v. *Railroad Co.,* 43 N. Y., 503 (3 Am. Rep., 721) ; *Gib-*

*ney* v. *State,* 137 N. Y., 6  (33 N. E., 142, 19 L. R. A., 365, 33 Am. St. Rep., 690).    But even in such a case the rescuer must not rashly and unnecessarily expose himself to danger. *Pennsylvania Co.* v. *Langendorf,* 48 Ohio St., 316  (28 N. E., 172, 13 L. R. A., 190, 29 Am. St. Rep., 553).

But whether the benefit of this rule is to be extended to one injured in an effort to save his own or another's property, exposed to danger by the wrongdoing or negligence of a third party, is a question that has provoked much difference of judicial opinion. Opposed to this extension are found the cases of *Eckert* v. *Railroad Co.,* 43 N. Y., 502  (3 Am. Rep., 721) ; *Morris* v. *Railway Co.,* 148 N. Y., 186  (42 N. E. 579) ; *Condiff* v. *Railroad Co.,* 45 Kan., 260  (25 Pac., 562) ; *Cook* v. *Johnston,* 58 Mich., 437  (25 N. W., 388, 55 Am. Rep., 703) ; and *Seale* v. *Railway Co.,* 65 Tex., 274  (57. Am. Rep., 602).    On the other hand, in *Berg* v. *Railway Co.,* 70 Minn., 272  (73 N. W., 648, 68 Am. St. Rep., 524) ; *Liming* v. *Railroad Co.,* 81 Iowa, 246  (47 N. W., 66) ; *Car. Co.* v. *Laack,* 143 Ill., 242  (32 N. E. 285, 18 L. R. A., 215) ; *Rexter* v. *Starin,* 73 N. Y., 601; and *Wasmer* v. *Railroad Co.,* 80 N. Y., 212  (36 Am. Rep., 608)—the rule has been extended so as to give the party injured redress where his effort to save property has been such as a reasonably prudent man would have made under similar circumstances.

In his charge to the jury the trial judge gave the

Chattanooga Light & Power Co. v. Hodges.

administrator of the deceased the benefit of the rule as announced in *Berg* v. *Railway Co.,* supra, and the other like cases.  We do not, however, feel called on to choose determinately between the divergent decisions on this point, and certainly we are not prepared to say the trial judge was in error.  But granting that he laid down the law correctly, the question recurs, was the injury received by Palmer, which resulted in his death, the proximate result of the negligence of the plaintiff in error?

An examination of the cases will confirm the statement of Mr. Archibald Watson, of the New York bar, in his recent and very valuable work, entitled "Damages for Personal Injuries," that "no branch of the subject of personal injuries presents greater difficulty than the determination of liability for a specific loss, with reference to its naturalness and proximity as a consequence of the wrongful act complained of."

So great has this uncertainty been felt, that many courts have reached the conclusion that, at last, "to a sound judgment must be left each particular case." *Harrison* v. *Berkley,* 1 Strob., 547 (47 Am. Dec., 578). The same view was expressed by the supreme court of the United States in *Insurance Co.,* v. *Tweed,* 7 Wall., 49 (19 L. Ed., 65), in the following language:  "We have had cited to us a general review of the doctrine of proximate and remote causes, as it has arisen and been decided by the courts in a great variety of cases. It would be an unprofitable labor to enter into an

examination of these cases.   If we could deduce from them the best possible expression of the rule, it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the nicest discrimination."

While there is much of practical truth in these statements, and the most careful study of the best textbooks and opinions of courts will fail to discover an infallible guide, yet it will be found that all agree on certain general formulas or rules, which, though difficult of application in some, are of value in all, cases involving this question of proximate or remote cause.

In *Deming* v. *Cotton Press Co.,* 90 Tenn., 353 (17 S. W., 99, 13 L. R. A., 518)., this court said: "The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted." This definition was approved in the later cases of *Telegraph Co.* v. *Zopfi,* 93 Tenn., 369 (24 S. W., 633); *Railroad Co.,* v. *Kelly,* 91 Tenn., 699 (20 S. W., 312, 17 L. R. A., 691, 30 Am. St. Rep., 902); and *Anderson* v. *Miller,* 96 Tenn., 35 (33 S. W., 615, 31 L. R. A., 604, 54 Am. St. Rep., 812).

In each of these cases, while the injury complained of was not the necessary effect of the particular act of negligence held to be the proximate cause, yet it was the natural result, and one which, in the face of

human experience, might well have been anticipated as possible, if not probable. In all of them the principle recognized was that a wrongdoer is liable not only for the injury which immediately results from his act, but for such consequential injuries as, according to the common experience of man, were likely to result.

But the consequential injury, according to the authorities, must be natural, "following upon the original wrongful act, in the usual, ordinary, and experienced course of events." *Wiley* v. *Railroad Co.*, 44 N. J. Law, 248; *Railroad Co.* v. *Kellogg*, 94 U. S., 469 (24 L. Ed., 256). But it is to be observed that the result will not be unnatural, so as to relieve the original wrongdoer of responsibility, because he did not foresee or contemplate the precise consequence of his misconduct. It will be sufficient to fix liability on him if the particular result is one naturally connected, either immediately or through a series of events, with the original wrongful act. Wats. Dam. & Pers. Injuries, sec. 145.

On the other hand, where the result is such that no reasonable man would expect it to occur, and no knowledge is shown in the person doing the negligent or wrongful act that such a state of things exists as to make the damage probable, we think the rule is that the injury will not be regarded as actionable as against the wrongdoer. *Sharp* v. *Powell*, L. R., 7 C. P., 253. And especially should this be true where the injury results from an act com-

mitted by the injured party so obviously fraught with
peril as should be sufficient to deter one of reason-
able intelligence. In such a case it would seem im-
possible to find any ground upon which to maintain
that the person guilty of the first act of negligence
should be held liable to the party so injured, and the
law, upon uncontroverted evidence showing such
facts, without more, should relieve the original wrong-
doer from liability. In such a case the intervening
act of the party injured should be treated as the
proximate cause of the injury. *Seale* v. *Railway Co.*,
65 Tex., 274 (57 Am. Rep., 602) ; *Pike* v. *Railway Co.*,
C. C., 39 Fed., 255.

On this phase of the subject, Mr. Watson, in section
82 of the work already referred to, says: "It is not
necessary, it is believed, to show that the plaintiff's
intervening act, which may render the defendant's act
the remote cause of the former's injuries, amounted
to contributory negligence in law. Whether, in its
character, the plaintiff's act is negligent or other-
wise, it will, just as an intervening cause of any other
nature, if unexpected, and of a character which could
not have been contemplated or foreseen, and without
which no injuries would have been occasioned, re-
lieve of liability the author of the original wrong."

Now, in view of these general rules, which it would
seem, are based on common fairness and right reason,
where, upon the undisputed facts as disclosed in the
record, rests the responsibility for the loss of young

Palmer's life?    Granting every inference indicating negligence on the part of the plaintiff in error which had to do with the origin of this fire, was the fatal injury sustained by him the natural or probable result therefrom?    Could any reasonable man, though guilty of this negligence, have contemplated that one, from a place of safety, would go through flame and smoke to his mortal injury?    Was such an act within the bounds of human experience?    Or was there an unbroken connection between the negligent act and the injury?    On the contrary, was not this intervening act of the deceased, however heroic it may have been,—one of extreme rashness, called for by no requirement of duty to his employer,—the proximate cause of his death?    Was it not an intermediate, efficient cause, operating to disconnect the fatal consequence from the original act of negligence?    While ordinarily the answers to those questions would naturally fall within the province of the jury, and, when made in their verdict, would be regarded as binding, yet where the facts are fairly incontrovertible the question of proximate or intervening cause is for the court.    *Holman* v. *Security Co.* (Colo. App.), 45 Pac., 519; *Stone* v. *Railroad Co.* (Mass.), 51 N. E., 1 (41 L. R. A., 794); *Bradley* v. *Railway Co.,* 94 Mich., 35 (53 N. W., 915); *Butcher* v. *Hyde,* 152 N. Y., 142 (46 N. E., 305).

Whatever may hereafter be developed, at least on the record as it now is, we think these questions must

be answered, as a matter of law, against the contention of the plaintiff below, and that the judgment must be reversed because of a lack of evidence to support the verdict on this material point.    The case is remanded for a new trial.